[Cite as *W. Branch Local School Dist. Bd. of Edn. v. W. Branch Edn. Assn.*, 2015-Ohio-2753.]

## STATE OF OHIO, MAHONING COUNTY
### IN THE COURT OF APPEALS
### SEVENTH DISTRICT

| | | |
|---|---|---|
| WEST BRANCH LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, | ) ) ) | CASE NO. 14 MA 53 |
| PLAINTIFF-APPELLEE, | ) ) | |
| VS. | ) ) | OPINION |
| WEST BRANCH EDUCATION ASSOCIATION, ET AL., | ) ) ) ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 13CV2393

JUDGMENT:      Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Helen S. Carroll
Atty. Sarah J. Moore
Roetzel & Andress, LPA
222 South Main Street
Akron, Ohio 44308

For Defendant-Appellant:      Atty. Ira J. Mirkin
Atty. Stanley J. Okusewsky III
Atty. Charles W. Oldfield
Green Haines Sgambati Co., LPA
City Centre One, Suite 800
100 Federal Plaza East
Youngstown, Ohio 44503

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 29, 2015

ROBB, J.

**{¶1}** Defendants-appellants West Branch Education Association and Ohio Education Association (collectively referred to as "Association") appeal the decision of the Mahoning County Common Pleas Court granting plaintiff-appellee West Branch Local School District Board of Education's ("Board") motion for a permanent injunction. The issue in this case is whether the trial court erred in granting the permanent injunction. Encompassed in that issue is whether the collective bargaining agreement ("CBA") between the Association and the Board provides that the grievance filed by the Association is arbitrable.

**{¶2}** We hold that the trial court erred in granting the permanent injunction. The claim is arbitrable. Therefore, the trial court's decision is hereby reversed and remanded with instructions for the trial court to deny the permanent injunction.

<u>Statement of the Facts and Case</u>

**{¶3}** The Board hired Tracie McFerren ("McFerren") as a teacher in 2008 and from 2011 to 2013 she was employed under an extended limited contract. That contract was set to expire on June 30, 2013. The Board's only options in terms of McFerren's future employment in 2013 were nonrenewal, or an award of a continuing contract/tenure.

**{¶4}** The Association and the Board entered into a CBA that ran from July 1, 2012 to June 30, 2014. This CBA governs McFerren's contract. In April 2013, the Board notified McFerren that it would not renew her limited teaching contract and provided her with a statement of the reasons for the decision. The Board held a hearing on June 10, 2013 concerning the non-renewal. After hearing the evidence the Board announced its final decision and declined to renew McFerren's contract. 6/15/13 Letter.

**{¶5}** The Association filed a grievance on July 18, 2013 protesting the Board's decision. The Association alleged violations of the CBA between the Board and the Association. The Superintendent of West Branch timely provided a written response to the Association and denied the grievance. In denying the grievance, the Superintendent informed the Association that the grievance was procedurally and substantively inarbitrable.

**{¶6}** The Association then submitted its request for arbitration to the Federal Mediation and Conciliation Service on August 13, 2013. In response, the Board filed the instant action in the Mahoning County Common Pleas Court seeking a temporary restraining order, and preliminary and permanent injunctions. 8/26/13 Complaint. In the complaint the Board asserted that the grievance is not subject to arbitration.

**{¶7}** The trial court granted the temporary restraining order the same day that the complaint was filed. Thereafter, the parties agreed to submit the matter to the court on the briefs in lieu of a hearing and agreed that the court could decide the preliminary and permanent injunctions simultaneously.

**{¶8}** After reviewing the parties' filings, the trial court granted the Board's request for a preliminary and permanent injunction. Thus, the trial court found that the grievance was not arbitrable.

**{¶9}** The Association appeals that decision.

Assignment of Error

"The trial court erred when it granted the School Board's motion for preliminary and permanent injunction."

**{¶10}** Although this assignment of error references the trial court's decision to grant both the preliminary injunction and the permanent injunction, it is noted that the decision to grant or deny a permanent injunction effectively moots the issue of the right to a preliminary injunction. *Alan v. Andrews*, 7th Dist. No. 06MA151, 2007-Ohio-2608, ¶ 51. Thus, our only concern on appeal is whether the trial court's decision to grant the permanent injunction was correct.

**{¶11}** The parties disagree about our standard of review. Generally, the decision to grant or deny an injunction is a matter within the discretion of the trial court, and a reviewing court will not disturb the judgment of the trial court absent an abuse of discretion. *Garono v. State,* 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988). An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶12}** Based upon that law, the Board asserts that we review the permanent injunction for an abuse of discretion. The Association disagrees. It acknowledges

the above stated law, but contends that since the determination of whether the grievance is arbitrable under the CBA, which is a contract, we review the matter de novo.

{¶13} Our sister district in deciding whether or not a permanent injunction should have been granted in a contract case has explained:

> While we review the trial court's granting of the permanent injunction pursuant to the above-stated standard, Appellant's argument raises the matter of contract construction. If the contract is clear and unambiguous, its interpretation is a matter of law, and there is no issue of fact to determine. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271, citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. However, where the contract language is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact. *Ohio Historical Soc. v. Gen. Maint. & Eng. Co.* (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340.

*AultCare Corp. v. Roach*, 5th Dist. No. 2008CA00287, 2009-Ohio-6186, ¶ 57.

{¶14} The specific issue before us is, does the language of the CBA indicate that the grievance filed by the Association is arbitrable? Resolution of this issue is a matter of contract interpretation, which is a matter of law. Hence, we employ a de novo standard of review.

{¶15} With that standard in mind, we now must decide whether the trial court erred in granting the permanent injunction. The test for granting a permanent injunction is similar to the test used for granting a preliminary injunction; however, there is one distinct difference. The preliminary injunction test requires the moving party to prove a substantial likelihood of success on the merits. *Chapin v. Nameth*, 7th Dist. No. 08 MA 18, 2009-Ohio-1025, ¶ 16 quoting, *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist.2000) (test for preliminary injunction). A permanent injunction test requires a higher standard. It requires the party seeking it to demonstrate a right to relief under the applicable

substantive law. *Village of Ottawa Hills v. Boice*, 6th Dist. No. L-12-1301, 2014-Ohio-1992, ¶ 14; *Procter & Gamble Co. v. Stoneham,* 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist.2000). Or in other words, the moving party must prove that he has prevailed on the merits. *Great Plains Exploration, L.L.C. v. Willoughby,* 11th Dist. No. 2006–L–022, 2006-Ohio-7009, ¶ 12; *AultCare*, 2009-Ohio-6186 at ¶ 56; *State ex rel Dewine v. Ashworth*, 4th Dist. No. 11CA16, 2012-Ohio-5632, ¶ 61, *Miller v. Miller,* 11th Dist. No. App. No.2004-T-0150, 2005-Ohio-5120, ¶ 10-11, citing *Ellinos, Inc. v. Austintown Twp.* (N.D.Ohio 2002), 203 F.Supp.2d 875, 886; *Edinburg Restaurant, Inc. v. Edinburg Twp.* (N.D.Ohio 2002), 203 F.Supp.2d 865, 873.

**{¶16}** In ruling on the preliminary and permanent injunctions, the trial court did not state that the Board prevailed on the merits. Rather, it stated that the Board "is likely to prevail on the merits." 4/9/14 J.E. Although the trial court incorrectly stated the test for granting a permanent injunction, the trial court did clearly grant a permanent injunction. Its judgment was a determination that the Board prevailed on the merits.

**{¶17}** The arguments raised in the sole assignment of error concern whether the Board prevailed on the merits. The "merits," in this instance, do not involve whether the Board complied with the CBA in evaluating the teacher, or whether the teacher is entitled to her job. The merits in this instance are confined to whether the grievance is arbitrable. The United State Supreme Court has explained:

> [I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those

which the court will deem meritorious." *American Mfg. Co.,* 363 U.S., at 568, 80 S.Ct., at 1346 (footnote omitted).

*AT & T Technologies, Inc.,* 475 U.S. at 649-50. Thus, the specific and narrow issue before us is whether the CBA requires arbitration of the grievance filed against the Board.

{¶18} The CBA contains a Grievance Policy and Procedure. CBA Article III. It defines a grievance as, "A claim by a bargaining unit member or the Association that there has been a violation, misinterpretation, or misapplication of the terms of this Agreement." CBA Article III, Section B(1). Resolution of a grievance, under this CBA, begins with an attempt to resolve it informally. If the matter cannot be resolved, then it proceeds through the six procedural levels as defined by the agreement, each level becoming more formal than the previous. Ultimately, if the grievance cannot be resolved by the less formal five procedural levels, then the grievance proceeds to the sixth and final level, which is binding arbitration. CBA Article III, Section C(6). The arbitrator's authority in binding arbitration "shall involve the interpretation, application or alleged violation of a <u>specific</u> provision(s) of the contract." CBA Article III, Section C(6)(a). However, the arbitrator has "no power to add to, subtract from, or modify any of the terms of the contract or to arbitrate any matter not specifically provided by the contract." CBA, Article III, Section C(6)(a).

{¶19} The written grievance the Association submitted states:

**Statement of Grievance:**

That the West Branch Board of Education and/or its agents violated, misinterpreted and/or misapplied the collective bargaining agreement, including but not limited to Article V. Rights and Responsibilities, Section G. Teacher Evaluation, Section L. Continuing Contracts, and Section Q. Fair Dismissal, when Tracie McFerren's teaching contract was non-renewed.

**Remedy Sought**:

That the West Branch Board of Education immediately grant a continuing contract to Tracie McFerren, lost wages and benefits, restoration of seniority, any other rights or privileges allowable under

the contract, and any other action or emolument deemed appropriate by the arbitrator in order to make the grievant whole. It is further requested that the arbitrator retain jurisdiction until compliance with the provisions of the award.

10/26/13 Complaint, Exhibit G.

**{¶20}** This grievance specifically references Article V, Rights and Responsibilities, Section G, Teacher Evaluations. The stated purpose for the evaluations is to assess the bargaining unit member's work performance and "to constitute the basis for personnel decisions including promotions, reassignments, continuing contract status, limited contract renewal, or contract non-renewal or termination." CBA Article V, Section G(2). Concerning what the teacher evaluation should contain, the CBA states:

1. In those areas where improvement is needed, the observer shall provide written direction for improvement strategies and assistance in correcting the deficiencies. The plan shall include a reasonable time between observations to allow time for improvement in the areas of performance deficiency.

CBA, Article V, Section G(3)(a)(1).

**{¶21}** Despite all the above language that requires a grievance to be arbitrated, the Board asserts that the CBA contains no language and no provision that allows a teacher to grieve the Board's ultimate decision to renew or non-renew a teacher's limited contract of employment. It directs this court to R.C. 3319.11 and the Fair Dismissal section in the CBA.

**{¶22}** The Fair Dismissal section in the CBA states, "All bargaining unit members shall have all rights under R.C. 3319.11." CBA Article V, Section Q. R.C. 3319.11 is titled Continuing Service Status and Contract; Limited Contract; Failure of Board or Superintendent to Act; Reemployment Procedures; Hearing on Denial of Reemployment R.C. 3319.11. This statute provides that if there is a recommendation from the superintendent that the teacher not be reemployed, and if the evaluation procedures in R.C. 3319.111 have not been followed, then the teacher is deemed

reemployed under an extended limited contract for at most a one year term at the same salary:

(2) If the superintendent recommends that a teacher eligible for continuing service status not be reemployed, the board may declare its intention not to reemploy the teacher by giving the teacher written notice on or before the first day of June of its intention not to reemploy the teacher. If evaluation procedures have not been complied with pursuant to section 3319.111 of the Revised Code or the board does not give the teacher written notice on or before the first day of June of its intention not to reemploy the teacher, the teacher is deemed reemployed under an extended limited contract for a term not to exceed one year at the same salary plus any increment provided by the salary schedule. The teacher is presumed to have accepted employment under the extended limited contract for a term not to exceed one year unless such teacher notifies the board in writing to the contrary on or before the fifteenth day of June, and an extended limited contract for a term not to exceed one year shall be executed accordingly. Upon any subsequent reemployment of a teacher only a continuing contract may be entered into.

* * *

(D) A teacher eligible for continuing contract status employed under an extended limited contract pursuant to division (B) or (C) of this section, is, at the expiration of such extended limited contract, deemed reemployed under a continuing contract at the same salary plus any increment granted by the salary schedule, unless evaluation procedures have been complied with pursuant to section 3319.111 of the Revised Code and the employing board, acting on the superintendent's recommendation that the teacher not be reemployed, gives the teacher written notice on or before the first day of June of its intention not to reemploy such teacher. A teacher who does not have evaluation procedures applied in compliance with section 3319.111 of

the Revised Code or who does not receive notice on or before the first day of June of the intention of the board not to reemploy such teacher is presumed to have accepted employment under a continuing contract unless such teacher notifies the board in writing to the contrary on or before the fifteenth day of June, and a continuing contract shall be executed accordingly.

R.C. 3319.11(B)(2), (D).

{¶23} The statute further provides that a teacher may appeal from an order affirming the intention of the board not to reemploy the teacher to the court of common pleas within thirty days of the date on which the teacher receives the written decision. R.C. 3319.11(G)(7). The court is "limited to the determination of procedural errors and to ordering the correction of procedural errors." R.C. 3319.11(G)(7). The statute then provides that the trial court has no jurisdiction to order a board to reemploy a teacher unless there is non-compliance with the evaluation procedures in R.C. 3319.111.

{¶24} The evaluation procedures set forth in the current version of R.C. 3319.111 are less onerous than the ones set forth in the CBA. Specifically, the current version of R.C. 3319.111 does not contain a requirement to give written direction for improvement and assistance in correcting the deficiencies. The version of R.C. 3319.111 that was effective from June 9, 2004 through July 28, 2011 had such a requirement in section (B)(3) as does the CBA before us.

{¶25} The CBA specifically states, "The provisions of Section G., Teacher Evaluation, are intended to supersede the provisions of R.C. 3319.111." CBA Article V, Section G(1). The Ohio Supreme Court has indicated that R.C. 3319.111 is a remedial statute and "unless a collective bargaining agreement specifically provides to the contrary, R.C. 3319.111 governs the evaluation of a teacher employed under a limited contract." *Naylor v. Cardinal Local School Dist. Bd. Of Edn.*, 69 Ohio St.3d 162, 165, 630 N.E.2d 725. The provision in the CBA at hand clearly provides to the contrary. Thus, pursuant to the Ohio Supreme Court's holding the provisions of the CBA govern the evaluation procedure.

{¶26} Although the Board admits that the evaluation procedure in the CBA governs, it contends that the provisions in R.C. 3319.11 also govern. Those provisions require the teacher who is not being reemployed to appeal that decision to the common pleas court. Consequently, according to it, the matter would not be arbitrable.

{¶27} We disagree based upon the clear language in R.C. 3319.11(G)(7). As stated above, the common pleas court is limited to procedural errors and correction of those procedural errors. Here, it is clear that the evaluation procedure was followed. However, the question at issue is substantive. The CBA indicates that in areas where improvement is needed, "written direction for improvement strategies and assistance" shall be provided. CBA, Article V, Section G(3)(a)(1). While the grievance filed claims, in general, that there was a violation, misinterpretation, and/or misapplication of Article V, Section G Teacher Evaluation of the CBA, the additional filings by the Association explains its position. The Association disputes that McFerren was informed of her deficiencies in the evaluations, provided direction for improvement, and granted assistance to correct the deficiencies. "The Board violated the terms of the Agreement by failing to provide Ms. McFerren with clear notice of areas where improvement was needed or giving her written direction and the means for improvement strategies in correcting any alleged 'deficiencies'." 9/19/13 Brief in Opposition, pg. 19. The transcript of the hearing by the Board that occurred on June 10, 2013, confirms that is the substance of the grievance. Thus, the issue is a substantive issue. Specifically, whether McFerren was provided with the tools needed to meet the Board's expectations. That issue could not properly be brought before the common pleas court under R.C. 3319.11; it is not a procedural issue concerning the evaluation process.

{¶28} Furthermore, reading the contract in the manner the Board suggests fails to take into account that the CBA clearly provides for arbitration of a grievance. As aforementioned, the CBA states that the arbitrator has the authority over any alleged violation of a specific provision of the contract. CBA Article III, Section C(6)(a). A grievance is a claim that is a violation of the terms of the CBA. CBA Article III, Section B(1). By these provisions, the preferred method to resolve any

grievance is through the grievance process and arbitration. There is no language in the definitions and provisions of the CBA that limits the grievance process to only nonterminable issues. The grievance filed in this case alleges that the Board "violated, misinterpreted and/or misapplied the collective bargaining agreement, including but not limited to Article V. Rights and Responsibilities, Section G. Teacher Evaluation, Section L. Continuing Contracts, and Section Q. Fair Dismissal, when Tracie McFerren's teaching contract was non-renewed." This grievance is an arbitrable claim under the definitions and provisions in the CBA. The law in Ohio is clear that arbitration is favored and any doubts in the applicability of a given provision should be resolved in favor of arbitration. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009–Ohio–2054, 908 N.E.2d 408, ¶ 15; *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20.

{¶29} The case at hand is similar to a case from our sister district. *Antram v. Upper Scioto Valley Local Sch. Dist. Bd. of Edn.*, 3d Dist. No. 6-08-4, 2008-Ohio-5824. Antram, a teacher, was evaluated. Following the evaluations, the superintendent recommended that the school board not renew his teaching contract. The school board followed that recommendation. Antram then requested a written statement of circumstances outlining the decision to not renew, which was provided to him. Thereafter, Antram requested and received a hearing. The board still chose to not renew his contract which resulted in him filing an appeal in the common pleas court. *Id.* at ¶ 2.

{¶30} After hearing the case, the trial court concluded that it did not have jurisdiction; it found that the collective bargaining agreement bound the parties to arbitration for dispute resolution. *Id.* at ¶ 3. In arguing that the trial court's decision was incorrect, Antram admitted that the collective bargaining agreement set forth a teacher evaluation process and also indicated the provision superseded R.C. 3319.111. *Id.* at ¶ 10. The focus of his argument was on the fact that the collective bargaining agreement did not contain language that the agreement superseded R.C. 3319.11. *Id.* In finding no merit with that argument, the appellate court provided the following reasoning:

In the case before us, Article 19 of the CBA sets forth the teacher evaluation process and specifically provides that "[t]his plan shall supersede O.R.C. § 3319.111." Additionally, Article 9 of the CBA describes the grievance procedure. "Grievance" is defined as "a claim by the Association or by one or more teachers that there has been a violation, misinterpretation or misapplication of a provision of the Agreement, or a violation, misapplication or misinterpretation of Board Policy." The CBA then describes four levels of formal grievance procedure, culminating in the aggrieved party submitting his grievance to binding arbitration. Further, the CBA provides that the procedures contained in Article 9 "constitute the sole and exclusive method of considering the redressing of grievances[,] * * * " and that, "it is expressly understood and agreed that neither the Association nor any teacher shall engage in actions which are not expressly provided for in the grievance procedure such as litigation or charges * * * in connection with any dispute which is or could have been a matter presented as a grievance and which has or could have been taken to arbitration Level Four within this grievance procedure." Thus, in summary, the CBA provides for binding arbitration for grievances arising under provisions of the CBA.

We agree with the trial court's finding that the teacher evaluation process set forth in the CBA explicitly supersedes the statutory evaluation process in R.C. 3319.111. Thus, disputes concerning teacher evaluation arise under a "provision" of the CBA as defined by Article 9 of the CBA. The grievance procedure described by Article 9 provides for binding arbitration as the exclusive method for resolution of grievances arising under provisions of the CBA. Here, the substance of Antram's dispute with USV was that it did not follow the teacher evaluation process set forth in the CBA. Accordingly, Antram's sole means of redress is the grievance procedure set forth in Article 9 of the

CBA, including arbitration, and the trial court was correct in concluding that it did not have jurisdiction to entertain his appeal.

*Id.* at ¶ 11-12.

{¶31} Given the similarities between the cases, the Antram decision supports our reasoning that the grievance filed is arbitrable. In reaching this conclusion, we acknowledge that the language in the collective bargaining agreement in *Antram* contained strong language that arbitration was the sole means of redress. *Id.* at ¶ 11. In the instance case, we do not have that exact language. However, the CBA does clearly indicate that arbitration shall be binding. CBA Article III, Section C(6)(a). Courts have concluded that when a collective bargaining agreement "provides for binding arbitration[,] * * * arbitration is the *exclusive* remedy for violations of employees' rights arising from the collective bargaining agreement." (Emphasis sic.) *Brannen v. Kings Local School Dist. Bd. of Edn.*, 144 Ohio App.3d 620, 628, 761 N.E.2d 84 (12th Dist.2001). Therefore, even though the agreement does not contain strong language that arbitration is the only means of redress, the fact that it calls for binding arbitration of an alleged violation is sufficient.

{¶32} For all of the reasons expressed above, this assignment of error has merit.

## Conclusion

{¶33} In conclusion, the sole assignment of error has merit. The grievance filed by the Association is arbitrable under the terms of the CBA. The trial court's decision is hereby reversed and the matter is remanded with instructions for the trial court to deny the motion for a permanent injunction.

Waite, J., concurs.

DeGenaro, J. concurs.