Curt C. Hartman, Judge
"It is generally improper for a court to dispose of a case on the merits following a hearing for preliminary injunction without consolidating that hearing with a hearing on the merits or otherwise giving notice to counsel that the merits would be considered." George P. Ballas Buick-GMC, Inc. v. Taylor Buick, Inc., 5 Ohio App.3d 71, 449 N.E.2d 503 (6th Dist. 1982). Nonetheless, because Rule 65(B)(2) of the Ohio Rules of Civil Procedure"provides that consolidation may be ordered 'before or after beginning the hearing,' the trial court can transform a preliminary injunction hearing into a consolidated hearing at any time and may do so on its own motion." 11A Wright, Miller & Kane, Federal Practice and Procedure § 2950 (2d ed. 1995). However, "[t]his power must be tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of a case on the merits." Id. But "when the parties in fact presented their entire cases and no evidence of significance would be forthcoming at trial, then [a] trial court's consolidation will not be considered to have been improper." Id.; accord Capital City Gas Co. v. Phillips Petroleum Co., 373 F.2d 128, 131 (2d Cir. 1967) ("permanent relief might be granted after a hearing upon a temporary injunction if no genuine issues of fact are found to be present").
In the case sub judice , prior to the commencement of the hearing on the Motions for Preliminary Injunctions , the parties conducted significant discovery, including depositions. Then, following several days of testimony and extensive argument by counsel, the Court issued a Preliminary Injunction precluding Defendants from undertaking any action to implement or enforce any and all provisions of Chapter 313 of the Cincinnati Municipal Code, including, without limitation, the outdoor advertising tax provided for therein. During this entire process, all parties acknowledged that the issues sub judice concerning Chapter 313 (which was enacted by Ordinance No. 167-2018) involved predominately legal issues. And this proposition was reiterated by the parties dining oral argument held on October 23, 2018, at which time the parties specifically addressed whether the Preliminary Injunction should be converted to a permanent injunction and, if so, whether language should be included finding no just reason for delay pursuant to *834 Rule 54(B) of the Ohio Rules of Civil Procedure.
Additionally, the Court apprized the parties formally on November 1, 2018, of its sua sponte consideration of whether to convert the Preliminary Injunction into a permanent injunction. In response thereto, Plaintiff LAMAR ADVANTAGE GP CO., LLC, dba LAMAR ADVERTISING OF CINCINNATI, OH, and Defendants CITY OF CINCINNATI and its officials tendered additional written responses to such potential action by the Court, indicating no substantive objection to the conversion.
While LAMAR and Plaintiff NORTON OUTDOOR ADVERTISING, INC., filed Amended Complaints since the issuance of the Preliminary Injunction, the Amended Complaints make no new substantive allegations concerning the issues underlying the scope of the Preliminary Injunction, i.e., the constitutionality of Chapter 313 of the Cincinnati Municipal Code as adopted through Ordinance No. 167. Thus, the Amended Complaints do not alter the evidence or issues presented to the Court as it relates to Chapter 313.
And while the parties have generally acknowledged the appropriateness to issue a permanent injunction, the Court still has undertaken an independent assessment of the factors for issuance of a permanent injunction. "The test for granting a permanent injunction is similar to the test used for granting a preliminary injunction." West Branch Local School Dist. Bd. of Ed. v. West Branch Ed. Ass'n , 2015-Ohio-2753, 35 N.E.3d 551, ¶ 15 (7th Dist.). However, certain distinctions do exists. Whereas "[t]he preliminary injunction test requires the moving party to prove a substantial likelihood of success on the merits," a permanent injunction test requires "the party seeking it to demonstrate a right to relief under the applicable substantive law." Id. And in addition to demonstrating irreparable injury, a complaining party seeking a permanent injunction must also demonstrate the lack of an adequate remedy at law. Ohio Hosp. Ass'n v. Ohio Bur. of Workers' Comp., 2007-Ohio-1499, 2007 WL 949468, ¶ 24 (10th Dist.). But ultimately, "[t]he essential prerequisite to a permanent injunction is the unavailability of an adequate remedy at law. Irreparable injury is, however, one basis, and probably the major one, for showing the inadequacy of any legal remedy. Often times the concepts of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable." Lewis v. S. S. Baune, 534 F.2d 1115, 1123-24 (5th Cir. 1976) (internal citation omitted) ). Based upon the Court's independent assessment of these factors,[1] the Court finds the analysis *836 supporting the issuance of the Preliminary Injunction clearly supports the issuance of a permanent injunction.
Because the issuance of a permanent injunction as it relates to Chapter 313 of the Cincinnati Municipal Code will not resolve all the claims sub judice, the Court must consider whether to make the determination that there is no just reason for delay pursuant to Ohio R. Civ. P. 54(B).
In deciding that there is no just reason for delay, the trial judge makes what is essentially a factual determination - whether an interlocutory appeal is consistent with the interests of sound judicial administration, i.e. , whether it leads to judicial economy. Trial judges are granted the discretion to make such a determination because they stand in an unmatched position to determine whether an appeal of a final order dealing with [multiple-claim or multiple-party actions] is most efficiently heard prior to trial on the merits. The trial court can best determine how the court's and the parties' resources may most effectively be utilized. The trial court is most capable of ascertaining whether not granting a final order might result in the case being tried twice. The trial court has seen the development of the case, is familiar with much of the evidence, is most familiar with the trial court calendar, and can best determine any likely detrimental effect of piecemeal litigation.
Chef Italiano Corp. v. Kent State Univ., 44 Ohio St.3d 86, 541 N.E.2d 64 (1989).
The CITY OF CINCINNATI objects to the inclusion of Rule 54(B) language "at this point" of the proceedings, maintaining that the inclusion of such language would bifurcate the issues sub judice and preclude appellate review of all issues at one time. While " Rule 54(B)'s general purpose is to accommodate the strong policy against piecemeal litigation with the possible injustice of delayed appeals in special situations," Noble v. Colwell, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989), the raison d'être for Ohio R. Civ. P. 54(B) supports allowing, inter alia , separate and discrete claims to proceed forward on appeal apart from unrelated claims even when all claims are against the same parties.
"In the ordinary case, Civ.R. 54(B) certification demonstrates that the trial court has determined that an order, albeit interlocutory, should be immediately appealable, in order to further the efficient administration of justice and to avoid piecemeal litigation or injustice attributable to delayed appeals." Sullivan v. Anderson Twp., 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, ¶ 11. In the case sub judice, two ordinances passed by the Cincinnati City Council are at issue, viz., Ordinance No. 167-2018 (involving the billboard tax and the no-stating-the-tax provisions) and Ordinance No. 163-2018 (involving the fees associated with billboard permits and the renewal period for such permits). And while the budgetary process in the City of Cincinnati brought about the passage of both ordinances, the factual and legal issues involved between the two are separate and distinct. Furthermore, legal issues dominate with respect to Ordinance No. 167, i.e., the target of the forthcoming permanent injunction. And finally, the interest of justice militates in minimizing the period *837 that implementation of Ordinance No. 167 is enjoined by this Court should appellate review ultimately uphold its constitutionality. Thus, the Court finds, in its discretion, that the issuance of a permanent injunction should include language declaring that there is no just reason for delay.
For the foregoing reason, a permanent injunction will issue consistent with the foregoing, as well as the analysis set forth in the Entry Granting in Part and Denying in Part Motions for Preliminary Injunction.
SO ORDERED.

In support of the issuance of the Preliminary Injunction, the Court addressed, inter alia, the decision in Clear Channel Outdoor, Inc. v. Department of Finance of Baltimore City , 2018 WL 1178952 (Md. Tax Feb. 27, 2018), wherein the Maryland Tax Court upheld a billboard tax in Baltimore. See Entry Granting in Part and Denying in Part Motions for Preliminary Injunction, at 20 n.10. Since the issuance of the Preliminary Injunction, the decision of the Maryland Tax Court was affirmed by the Baltimore City Circuit Court. Clear Channel Outdoor, Inc. v. Director, Department of Finance of Baltimore City, Case No. 24-C-18-001778 (Baltimore City Cir. Ct. Oct. 22, 2018).
As part of the present consideration of the merits on the issuance vel non of a permanent injunction, this Court has also reviewed that recent decision by the Baltimore City Circuit Court. Nonetheless, the analysis by that court has not altered the conclusion of this Court on the merits. In affirming the decision of the Maryland Tax Court, the Baltimore City Circuit Court summarily accepted and proceeded from the proposition that "the tax [upon billboards imposed by Baltimore] is directed at a means of expression rather than the expression itself" and that "[t]he First Amendment only affords protection to regulation of actual or symbolic speech, and expressive conduct." Id. at 6. It, therefore, summarily concluded that "[the billboard tax] is not a tax on Clear Channel's right to free speech".
But well-established precedent clearly recognizes that the means of engaging in or distributing speech are protected under the First Amendment. See, e.g., Joseph Burstyn, Inc. v. Wilson , 343 U.S. 495, 502, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) ("we conclude that expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments"); Kingsley Intern. Pictures Corp. v. Regents of University of State of N.Y., 360 U.S. 684, 690, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959) ("[i]t is enough for the present case to reaffirm that motion pictures are within the First and Fourteenth Amendments' basic protection); Ayres v. City of Chicago , 125 F.3d 1010 (7th Cir. 1997) ("distribution of T-shirts is the principal means by which the group propagates its views" and "there is no question that the T-shirts are a medium of expression prima facie protected by the free-speech clause of the First Amendment, and they do not lose their protection by being sold rather than given away"); Romantics v. Activision Pub., Inc., 574 F.Supp.2d 758, 765 (E.D. Mich. 2008) ("[n]umerous courts have held that video games are expressive works protected by the First Amendment"); Chicago Tribune Co. v. City of Chicago, 705 F.Supp. 1345, 1347 (N.D. Ill. 1989) ("[t]he First Amendment protects the means of newspaper distribution as well as the content and ideas expressed in newspapers").
In fact, the Supreme Court recognized in Metromedia, Inc. v. City of San Diego , 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), that billboards themselves, i.e., means of expression, are entitled to First Amendment protection. Id. at 524, 101 S.Ct. 2882 (Brennan, J., concurring)("[t]he plurality and I agree that billboards are a medium of communication warranting First Amendment protection"); see also Prime Media, Inc. v. City of Brentwood, Tenn., 398 F.3d 814, 818 (6th Cir. 2005) ("[b]illboards and other visual signs, it is clear, represent a medium of expression that the Free Speech Clause has long protected"); Bill Salter Advertising, Inc. v. City of Brewton, Ala., 486 F.Supp.2d 1314, 1328 (S.D. Ala. 2007) ("advertising billboards at issue in these proceedings are plainly entitled to First Amendment protection"). Thus, the entire foundation for the analysis of the Baltimore City Circuit Court, i.e., that because the billboard tax is directed at the "means of expression rather than the expression itself" there is not a First Amendment interest implicated, is clearly repudiated by well-established case law.
However, unlike the Maryland Tax Court, the Baltimore City Circuit Court actually attempted to distinguish Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue , 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). In so doing, though, the Court initially focused upon the issue of whether the challenged tax deviated from an already-existing tax scheme. Relying upon the fact that the tax at issue in Minneapolis Star was a "special use tax" that deviated from an already-existing unitary sales tax scheme, the Baltimore City Circuit Court declared Minneapolis Star to be "immaterial" because "there [was] no preexisting general [tax] scheme [in Baltimore] that the City deviate[d] from to single out billboard operators for special treatment." Clear Channel Outdoor, Case No. 24-C-18-001778, at 8. Such a proposition is spacious. Even if the deviation vel non from an existing tax scheme is pertinent, the absence of a particular type of tax is an existing tax scheme; and the City of Baltimore clearly deviated from that already-existing tax scheme when it isolated and targeted billboard operators for the imposition of an entirely new tax. The same is true with respect to the billboard tax imposed by the City of Cincinnati.
Additionally, the Baltimore City Circuit Court attempted to distinguish Minneapolis Star on the premise that the latter involved constitutional rights for the press and that because "billboards are primarily for advertising... [they] simply [are] not in the same category as the fourth estate." Clear Channel Outdoor , Case No. 24-C-18-001778, at 9. But "[t]he Supreme Court has made clear that courts should eschew creating a hierarchy among First Amendment rights." Rutherford v. Katonah-Lewisboro School Dist ., 670 F.Supp.2d 230, 245 (S.D.N.Y. 2009). Yet that is precisely what the Baltimore City Circuit Court has done (and, in so doing, contradicting its earlier assessment that the means of expression are not entitled to protection).
And in a final effort to distinguish Minneapolis Star , the Baltimore City Circuit Court relied upon the difference in the "type of tax" involved, i.e., a use tax versus an excise tax. Clear Channel Outdoor, Case No. 24-C-18-001778, at 9. But the type of tax involved is not the issue; regardless of the appellation that may be given to any particular the tax, the focus is whether, in the exercise of its taxing powers, the government has singled out and directed or targeted a tax solely at the exercise of First Amendment rights or at the means or instruments utilized in exercising First Amendment rights or whether a tax has targeted a small narrow group to bear the burden of the tax. That is precisely what the CITY OF CINCINNATI has done in the case sub judice and, in so doing, the CITY OF CINCINNATI has clearly run afoul of the First Amendment.