[Cite as *Streetsboro Edn. Assn. v. Streetsboro City School Dist. Bd. of Edn.*, 2019-Ohio-2170.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STREETSBORO EDUCATION ASSOCIATION, | : | **O P I N I O N** |
| | : | |
| Petitioner-Appellant, | : | **CASE NO. 2018-P-0058** |
| | : | |
| - vs - | : | |
| STREETSBORO CITY SCHOOL DISTRICT BOARD OF EDUCATION, | : | |
| Respondent-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2017 CV 00588.

Judgment: Affirmed.

*Ira J. Mirkin, Richard T. Bush, Charles W. Oldfield* and *Danielle L. Murphy,* Green, Haines, Sgambati Co., L.P.A., 100 Federal Plaza East, Suite 800, Youngstown, OH 44503 (For Petitioner-Appellant).

*Christian M. Williams* and *Jacqueline Walsh Brickman,* Pepple & Waggoner, Ltd, Crown Centre Building, 5005 Rockside Road, Suite 260, Independence, OH 44131 (For Respondent-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, the Streetsboro Education Association ("SEA"), appeals from the judgment of the Portage County Court of Common Pleas, denying its petition to enforce its arbitration agreement with appellee, Streetsboro City School District Board of Education ("the Board"). We affirm.

{¶2} SEA is the sole and exclusive representative of all bargaining unit teachers employed by the Board. SEA and the Board entered a collective bargaining agreement ("CBA"), effective July 1, 2016 through June 30, 2019. In 2016, Gretchen Weaver and Shane Ellsworth were employed by the Board as music teachers. During their employment, the teachers were involved in planning and supervising band camps. On August 1, 2016, two parents of band members raised issues with the Board relating to alleged hazing activities occurring at the 2016 band camp. Superintendent Michael Daulbaugh ("the Superintendent") initiated an investigation that led to specifications providing a basis for the Board to consider terminating the teachers. Accordingly, on December 15, 2017, the Superintendent provided the teachers with pre-termination notices setting forth reasons why the Board would be considering termination; pre-termination hearings were held and, on January 24, 2017, the Board adopted two resolutions initiating proceedings to terminate the teachers' employment contracts, pursuant to Art. 31 of the CBA and in accordance with R.C. 3319.16, governing the procedures for terminating a teacher's contract by a board of education.

{¶3} On January 27, 2017, SEA filed informal grievances, on behalf of the teachers, pursuant to the CBA. The grievances alleged the Board violated the progressive disciplinary procedure, defined in Art. 31, as well as the procedure for handling "Parental Concerns," set forth in Art. 12. And, on March 3, 2017, the teachers filed formal grievances relating to the foregoing issues. On March 13, 2017, the Superintendent denied the grievances, concluding the Board did not breach, misapply, or misinterpret the CBA in initiating the termination proceedings. On April 6, 2017, SEA challenged the Superintendent's conclusion by filing a "Level Three" grievance,

pursuant to the CBA. On May 12, 2017, the Superintendent principally concluded the Level III grievance was filed untimely. Pursuant to Art. 19(D), SEA was required to file the challenge to the initial decision within five days of the previous decision. Notwithstanding this conclusion, SEA subsequently notified the Superintendent of its intention to advance the grievance to formal arbitration. In response, the Superintendent advised SEA that the Board would not participate in arbitration because their grievances were waived for failure to file a timely appeal of the original grievance. Although SEA requested a panel of arbitrators from the American Arbitration Association, the file was closed based upon the Board's refusal to participate.

{¶4} On July 5 and July 25, 2017, respectively, SEA filed the underlying petitions in the trial court on behalf of each teacher. The petitions alleged the Board violated the CBA by declining to go forward with binding arbitration of the teachers' two grievances. The Board, in its answer, noted the appeal of the grievances was untimely and, as a result, arbitration was waived. And, the Board asserted that, despite the CBA's provisions relating to progressive discipline and parental concerns, the "sole remedy" for termination proceedings is the statutory appellate process set forth in R.C. 3319.16. The cases were consolidated and the issues were briefed.

{¶5} Meanwhile, in the R.C. 3319.16 proceedings, the teachers demanded a hearing in relation to the termination of their teaching contracts. In August and September of 2017, a referee conducted a hearing to determine whether the preponderance of the evidence supported the grounds for termination and, if so, whether termination of the teachers' employment contracts should be recommended to the Board. In December 2017, the referee filed his recommendation. He found the

3

teachers did not permit, condone, or encourage hazing and they generally protected the health, safety, and welfare of students. The referee, however, found that certain actions by the teachers were done in "bad taste" and were "fairly serious matters" constituting just cause for discipline. Ultimately, the referee recommended, however, that the teachers not be terminated.

{¶6} On December 28, 2017, the Board rejected the referee's recommendation based upon its differing interpretation of the facts and terminated the teachers' employment contracts. The teachers subsequently filed statutory appeals to the court of common pleas and then to this court, where the matter remains pending.

{¶7} Returning to the instant matter, on July 10, 2018, the trial court denied SEA's petition, concluding, inter alia, the plain language of the CBA required the parties to litigate disputes regarding teacher terminations per the procedures under R.C. 3319.16. SEA appeals that judgment and assigns five errors for our review. Its first assignment of error provides:

{¶8} "The common pleas court erred by denying petitioner-appellant Streetsboro Education Association's petition to enforce its arbitration agreement with respondent-appellee Streetsboro City School District Board of Education."

{¶9} SEA frames the foregoing assigned error as a "general assignment of error." The general assignment of error does not precisely assert an error for review; rather, it provides an overlay of basic principles of arbitration law. Given the lack of argumentation, there is no error for this court to evaluate. This purported assignment of error therefore lacks merit.

4

**{¶10}** We shall address SEA's next two assignments of error together. They assert:

**{¶11}** "[2.] The lower court erred by disregarding the strong presumption of arbitrability created by the parties' broad arbitration agreement and determining that the agreement precluded arbitration of the Association's grievances."

**{¶12}** "[3.] The lower court erred in addressing the procedural issue of timely processing of the grievances and in determining that arbitration was procedurally barred.

**{¶13}** Under these assignments of error, SEA first contends the trial court failed to apply the presumption of arbitrability of the grievances it filed on the teachers' behalf and, in failing to do so, improperly construed the CBA's termination provision under Art. 31(A). SEA further contends the trial court erred in concluding the grievances were filed untimely because (1) procedural arbitrability, i.e., timeliness of filing, is a matter for an arbitrator to decide and (2) the grievances were, in fact, timely filed.

**{¶14}** Art. 31 of the CBA is captioned "Progressive Discipline." It provides:

**{¶15}** "A. <u>STANDARDS OF DISCIPLINE</u>

**{¶16}** No bargaining unit member shall be disciplined by the Board or any of its agents in an arbitrary and capricious manner or without just cause. If an employee receives a pre-disciplinary letter directing him/her to a meeting to answer allegations with a copy to the personnel file, and the pre-disciplinary meeting results in the employee being cleared of any or all of the allegations, the employee may request that a notation stating same shall be attached to said pre-disciplinary letter and included in the personnel file. If requested, the request will be granted. *Termination of a bargaining unit member's contract shall be in accordance with 3319.16 of the Ohio Revised Code.*

**{¶17}** B. <u>DISCIPLINARY STEPS</u>

5

**{¶18}** Disciplinary actions shall consist of three (3) steps. If there is a serious offense, disciplinary action may be initiated at any level. Discipline may include repetition of a step.

**{¶19}** Step One: Verbal warning(s) with note to personnel file signed by the employee.

**{¶20}** Step Two: Written reprimand(s).

**{¶21}** Step Three: One to ten-day suspension with or without pay. (Emphasis added.)

**{¶22}** Art. 12 sets forth procedures governing situation where a parent of a student expresses concern about teachers' conduct that are subject to the CBA. First, parental concerns are addressed via an informal process whereby the concerns are communicated by the principal to the teacher and any issues are resolved via oral meetings. An affected employee shall be provided any written statement filed by a parent. Next, if the communications and meetings do not lead to a resolution, a formal investigation is initiated. Within five days of the receipt of the concern, the teacher, principal, or immediate supervisor shall meet to discuss the concern. If the concern is still not resolved, the issue may be appealed to the Superintendent, where the concern will be discussed with all parties involved. Finally, if the parent is still unsatisfied, the matter may be appealed to the Board and written disposition of the concern will be issued by that body.

**{¶23}** Art. 19 of the CBA sets forth the grievance procedure. In that section, a grievance is defined as "an alleged breach, misapplication or misinterpretation of this Contract." Art. 19(C) provides for an informal grievance procedure, which involves informal discussions and meetings with a school administrator to resolve the alleged grievance. Art. 19(D) details the formal procedure for addressing grievances, which is

6

employed if the informal procedure does not resolve the employee's issue(s). The CBA sets forth four levels to the formal procedure.

**{¶24}** At Level One, the administrator is required to conduct a conference within five days of the filing of the grievance and issue a decision within five days of the conference. Under Level Two, if the grievance is not resolved, the employee shall submit the grievance to the Superintendent, who within five days of the receipt of the grievance, shall meet with the aggrieved. Within five days of the meeting, the Superintendent shall issue a decision to the employee and SEA. Level Two may be omitted if the Superintendent is the administrator who addressed the grievance at Level One. Pursuant to Level Three, if the grievance is not resolved, the employee must submit a written notice to the Superintendent of the employee's intention to continue the grievance process within five days of receiving the Superintendent's decision. Finally, at Level Four, if the action taken by the Board fails to resolve the grievance, the employee may appeal the decision to arbitration within 20 days of the decision by the Board.

**{¶25}** On January 27, 2017, SEA filed informal grievances on behalf of both teachers. The first informal grievance alleged the Board violated Art. 31 of the CBA by disciplining the affected teachers in an arbitrary and capricious manner and without just cause. The second informal grievance asserted the Board violated "Art. 13" [sic.], the parental concern procedure, of the CBA by initiating termination proceedings via resolution at the January 24, 2017 pre-termination hearing. It is not entirely clear how the parties addressed these grievances; nevertheless, they were not resolved to the teachers' satisfaction and, as a result, SEA filed formal grievances on March 3, 2017.

And, on March 13, 2017, the Superintendent determined the Board did not violate the CBA. On April 4, 2017, some 13 school days after the March 13 disposition, SEA filed a Level Three appeal of the Superintendent's disposition. The appeal was deemed untimely because it was filed well beyond the five-day limitations period set forth in Art. 19(D)(3).

{¶26} With respect to the timeliness of the appeal, the record reflects that, in the summer of 2014, the parties engaged in litigation that concluded in an arbitrator rendering a decision, on September 27, 2016, that untimely grievances under the CBA are not arbitrable. The arbitrator in that matter noted "[t]he Agreement is clear that time limits are maximums and must be adhered to[.]" Regardless of the legal presumption favoring arbitrability, and even assuming the grievances were subject to arbitration, SEA failed to timely process the Level Three appeal pursuant to the timeframe set forth in the CBA. Accordingly, the procedural arbitrability of a grievance, i.e., the timeliness of the grievance, is an issue that has been previously resolved in arbitration between SEA and the Board and that decision is binding on the parties. Thus, the trial court did not err in drawing the procedural conclusion that the grievances were barred as untimely.

{¶27} Additionally, and notwithstanding the above conclusion, Art. 31 unequivocally states, under "standards of discipline," that the "[t]ermination of a bargaining unit member's contract shall be in accordance with 3319.16 of the Ohio Revised Code." SEA maintains the initiation of termination proceedings violated the provisions of the progressive disciplinary procedure. And, because grievances were filed in relation to this point, the issue was necessarily arbitrable. We do not agree.

{¶28} Even though the process for termination appears under Art. 31, titled "progressive discipline," and there are progressive "disciplinary steps," termination of an employees contract is separate and distinct from those steps under the CBA. The CBA unambiguously mandates that termination is in accordance with the statutory procedures set forth under R.C. 3319.16. As such, termination is excluded from the progressive disciplinary procedure and can be initiated independently of those steps. SEA's argument lacks merit.

{¶29} SEA next asserts that even though termination of a contract shall be addressed in accordance with the statute, it claims the CBA is silent on challenges to such termination. Hence, SEA maintains, the presumption in favor or arbitrability militates in favor of arbitrating such challenges.

{¶30} R.C. 3319.16 governs "[t]ermination of contract by board of education; hearings; appeals[.]" The statute provides that, "[n]otwithstanding any provision to the contrary in Chapter 4117. of the Revised Code, the provisions of this section relating to the grounds for termination of the contract of a teacher *prevail over any conflicting provisions of a collective bargaining agreement entered into after the effective date of this amendment[, 2009]*." The statute directly states that parties cannot bargain contrary to law regarding the grounds for termination of a teacher's contract.

{¶31} R.C. 3319.16 sets forth procedures that require "good and just cause" to terminate a teacher. After a hearing, a referee will issue a recommendation to the Board. The Board must hold a hearing and either accept or reject the referee's recommendation. If the Board orders termination of the contract, the affected teacher may appeal to the court of common pleas and, after considering the record and/or

9

holding additional hearings, the court shall grant or deny relief. Either the teacher or the Board may appeal this decision to the court of appeals. In light of the foregoing procedural allowances, it is clear that the R.C. 3319.16 process affords a teacher the right to thoroughly challenge a just cause determination. SEA's argument is unavailing.

{¶32} SEA next argues that the "in accordance with R.C. 3319.16" language merely refers to the substantive standard that must be used in the context of termination, i.e., for good and just cause, and not necessarily to the procedures detailed in the body of the statute. In support, SEA cites this court's opinion in *Chardon Local School District Bd. of Edn. V. Chardon Education Assn.*, 11th Dist. Geauga No. 2012-G-3110, 2013-Ohio-4547. In *Chardon*, the school board terminated a teacher for good and just cause, pursuant to R.C. 3319.16. After termination, the association filed a grievance, pursuant to the parties' CBA, which proceeded to arbitration over whether the Board had "good and just cause" to terminate the teacher's employment. The arbitrator overturned finding the teacher's acts and/or behavior was not "egregious." The Board moved to vacate the arbitrator's decision and the trial court entered judgment granting the Board's motion to vacate. The trial court determined the arbitrator added terms to the CBA, e.g., egregious acts and behavior, that transcended the just cause standard set forth under R.C. 3319.16 and this court affirmed.

{¶33} The issue in *Chardon* was whether the arbitrator exceeded his authority in overturning the just cause determination. This does not imply that the reference to R.C. 3319.16 in the *Chardon* CBA was merely a directive to use the "good and just cause" standard. Rather, the court in *Chardon* noted that R.C. 3319.16 requires just cause, which was different than the standard applied by the arbitrator. We cannot infer that the

10

*Chardon* court's statement that the accurate interpretation to a reference to R.C. 3319.16 in any CBA is simply a directive to use the statute's just cause standard and not its substantive and procedural requirements. We do not know all the nuances of the CBA in *Chardon* and, given the sequence of procedures set forth in the opinion, it would appear the CBA in that case was materially different than the CBA in this case. Because the issue in *Chardon* was different and we have no way of knowing the full meaning and implications of the CBA in that matter, we decline to accept SEA's interpretation of that case.

{¶34} Next, SEA cites *W. Branch Local School Dist. Bd. of Edn. v. W. Branch Edn. Assn.*, 7th Dist. Mahoning No. 14 MA 53, 2015-Ohio-2753, in support of its position. In *W. Branch*, the court determined that a grievance relating to the school board's decision not to re-employ a teacher was subject to arbitration rather than R.C. 3319.11, a statute which sets forth, inter alia, a procedure for a hearing upon denial of reemployment. Pursuant to that statue, R.C. 3319.111 sets forth the evaluation procedures that must be followed in the application of R.C. 3319.11. The CBA in *W. Branch* stated "[a]ll bargaining unit members shall have all rights under R.C. 3319.11." *W. Branch*, *supra*, at ¶22. From this, the Board argued the association was required to follow the statutory process, rather than arbitrate her grievance. The association pointed out, however, the CBA also provided "[t]he provisions of Section G., Teacher Evaluation, are intended to supersede the provisions of R.C. 3319.111." *W. Branch*, *supra*, at ¶25. The grievance at issue in *W. Branch* was premised upon alleged violations of Section G, which required arbitration. Moreover, the court in *W. Branch* noted the procedures set forth under R.C. 3319.11 limit a court to reviewing procedural

11

errors and correcting those errors and, as a result, a court would lack jurisdiction to review the alleged evaluation errors that were the subject of the teacher's grievance. Thus, the court concluded the grievance was subject to arbitration.

{¶35} In this case, there is nothing to suggest the procedures set forth in the grievance process supersede the provisions of R.C. 3319.16. Moreover, the procedures set forth under R.C. 3319.16 permit a court to grant an association substantive relief to a terminated teacher. *W. Branch* is accordingly distinguishable from the instant matter.

{¶36} SEA next cites *Stow Firefighters, IAFF Local 1662 v. Stow*, 9th Dist. Summit No. 25090, 2011-Ohio-1558. In *Stow*, the city terminated a firefighter for failure to pass a fitness-for-duty evaluation. The parties disputed whether the dismissal was disciplinary or non-disciplinary. If the former, it was subject to arbitration under the parties' CBA. The Ninth District determined that both parties' positions were reasonable and, as a result, in light of the legal presumption favoring arbitration, determined the dispute was arbitrable.

{¶37} In this case, Art. 31 of the CBA expressly states termination of an employee shall be "in accordance with R.C. 3319.16," which sets forth extensive procedures for an affected teacher to challenge the Board's decision. As discussed above, we discern no ambiguity in this directive and thus, the presumption favoring arbitration is inapplicable.

{¶38} Finally, SEA cites *Northern States Power Co. v. Commissioner of Revenue*, 2d Jud. Dist. Minn. Tax, 1984 WL 2999, a Minnesota case in which the court observed the word "accordance" included the meanings "agreement," "harmony" and

12

"conformity." *Id.* at *3. As such, SEA argues the CBA's provision that termination shall be in accordance with R.C. 3319.16, "merely harmonizes the standard of discipline with that set forth in R.C. 3319.16," i.e., good and just cause. As discussed in our review of *Chardon*, *supra*, we do not read the termination provision in Art. 31 to merely incorporate the statutory "good and just cause" standard. Rather, we read the phrase "in accordance with" R.C. 3319.16 as a mandate that decisions by the Board to terminate an employee follow the detailed procedures set forth in that statute.

**{¶39}** In summary, we hold the trial court did not err in concluding the R.C. 3319.16 procedures governed termination proceedings under the CBA. We further hold the trial court did not err in its determination that, even if SEA's grievances were arbitrable, they were time barred, pursuant to Art. 19 of the CBA.

**{¶40}** SEA's second and third assignments of error lack merit.

**{¶41}** SEA's fourth and fifth assignments of error provide:

**{¶42}** "[4.] The lower court erred in finding that R.C. 3319.16 proceedings, in which the referee found no just cause to terminate the teaching contracts of bargaining unit members Shane Ellsworth and Gretchen Weaver, were res judicata barring arbitration of the Association's grievances."

**{¶43}** "[5.] The lower court erred in finding that the petition to enforce the arbitration agreement was barred by failure to join necessary parties."

**{¶44}** Because we hold the R.C. 3319.16 provides the exclusive procedure under the CBA when termination proceedings are initiated, and affirm the trial court on that basis, we need not address the trial court's alternative bases for denying SEA's

13

petition. "[A] court will generally not resolve a moot controversy." *Lingo v. Ohio Cent. R.R.,* 10th Dist. Franklin No. 05AP-206, 2006-Ohio-2268, ¶20.

{¶45} "Actions or opinions are described as 'moot' when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations. * * * 'A moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy.'"*Grove City v. Clark*, 10th Dist. Franklin No. 01AP-1369, 2002-Ohio-4549, ¶11, quoting *Culver v. City of Warren*, 84 Ohio App. 373, 393 (11th Dist.1948).

{¶46} Given our disposition of SEA's second and third assignments of error, an analysis of the propriety of the trial court's application of res judicata as well as its procedural conclusion vis-à-vis Civ.R. 19 would have no practical legal effect. SEA's fourth and fifth assignments of error are therefore overruled as moot.

{¶47} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J.,

MATT LYNCH, J.,

concur.